Again, this is Thomas Rask, the attorney of record for the plaintiff appellant Cecilia Barnes. Good morning. May it rest the court. We are here today on a case that is of first impression, and it's a case about broken promises. Today I would like to present to you a framework for a decision in this case, a framework for analysis, and begin by talking briefly about the facts and pointing out certain cases and areas of law for you to consider. Well, Mr. Rask, we have this section 230 immunity issue. Suppose Yahoo did not offer to take this material down. Would you agree that the 12b-6 motion was properly granted? I would agree, yes, that in fact it was the affirmative action by the representative Yahoo in contacting the plaintiff at an effort to avoid negative press, as you remember from the facts, a local reporter was doing a story on the fact that this had gone on and that Ms. Barnes had suffered for months, and the reporter calls the Yahoo PR representative and says, what's happening here? And that person on their own, the other representative, contacts the plaintiff and says, send me the material, the letters you sent prior, and we will take care of this. I'm sure you're going to get into this, but are you arguing that there is a waiver of 230 immunity by the post-contact conduct, or is this a separate contract, let's say, with separate consideration, which would be exempt? I'm not quite sure what the focus of your position is. Well, the analysis, Your Honor, I think starts with the issue of whether or not this tort, which we allege to be negligent performance of an undertaking to render services, which has been briefed by both sides as Restatement Second Torts 323, which has been adopted by the Oregon courts, that by itself creates a separate tort outside of 230. But if the court, and again, looking at a framework, should decide that somehow a claim of this nature falls under 230, well then, yes, we're asserting it's a waiver. Counsel, let me ask you this. Does it make any difference if the claim sounds in contract or in tort? For example, let's suppose someone contacts Yahoo and says, I see that my nephew has been, you know, sexually abused, and there's this child pornography, and I want you to take it off the web. And they say, well, it costs us something to do that. So if you send us 50 bucks to cover our costs, we'll agree to remove this content. Or let's say it's not anything that's illegal, but just unflattering. And that would presumably be some kind of a contract action. Would that also be outside of Section 230, and does it matter whether it's contractual or tortious? I do not think it matters. And the fact pattern you suggested, yes, we would believe you'd have a claim for breach of contract. In our situation here, we have a breach of negligent performance in undertaking a duty. It's sort of like a good Samaritan who comes by and ends up making the person a lot worse. Well, and correct Your Honor, under Oregon law, under Restatement 323, one who undertakes gratuitously or for consideration to render services for the benefit and protection of others is subject to liability for physical harm arising from the failure to reasonably exercise that standard of care. And that harm can arise in two arenas, either by failing to exercise such care to increase the risk of harm, which is what happened in this case, the every day after the promise, after the commitment was made to take down the sites, additional men contacted my client, came to her office expecting sex, the continual harassments, the phone calls. Her physical harm continued for days, unanswered, every day that Yahoo did not respond. And Part 2 says because the harm is suffered because of the reliance on the representation. So we meet both parts of the test. It's an either-or test. But our position is the harm was increased over time by Yahoo's failure to fall through on its commitment. Separately from that, the harm suffered was in reliance. There are other steps potentially could have been taken by the plaintiff. For instance, she was going to testify before the Oregon legislature. The reporter was going to do a story. At Yahoo's direction, she ceased that because Yahoo said we will take it down. Yahoo's point of view. So it's kind of a promissory estoppel. And that's what's the restatement. Yeah. Yeah, sure. That's the same that gets to this idea of detrimental reliance. If you rely on someone's statements, and they do not in a reasonable way fall through, a reasonable standard of care, as cited by Restatement 323, then, in fact, you have a claim of negligence. You also have the restatement of contract section 90, detrimental reliance. Is that a twin to this? I think it's very similar. And if you want to fashion it in that context, you could. I suppose the question might be what's the consideration? Clearly, the consideration from our perspective would be we stopped any other actions which detrimentally relied then on the statements by Yahoo. Now, how much of the ---- Mr. Bass. Yes, Your Honor. If she had contacted them at Yahoo and asked them to take it down, would that be a different case? I think it would depend, Your Honor, on what was said by Yahoo. But, yes, the short answer is I do think it would be different if Yahoo did not affirmatively undertake this duty on their own. There are many cases cited by Yahoo and by the appellant in this case where no statements were made. For instance, in Carafano, here in the Ninth Circuit, in Carafano, there is nothing in the record about what the website said to the offended party. In that case, an agent of the actress who was damaged contacted the web provider and the web provider said, well, you're not the party who put it up, so we're not sure we can do anything. But within 48 hours, it was taken down. Now, in that case, the website provider did not affirmatively say we're going to do anything. And so I do think that's a critical issue in this case. It's distinguishing from other cases because you have here, again, taking the pleadings, de novo, the standard review, and assumed to be true, you have here an affirmative step taken by Yahoo on its own. Now, one could argue it's because they're trying to avoid bad press and have problems. The reporters are calling and it's a big deal. But, nevertheless, whatever their motive, and we think it was a bad motive, but whatever their motive is, they undertook this on their own. And that clearly distinguishes this case from many cited by Yahoo in their brief. Well, I have a question about the procedural status here. This was a 12B6, correct? Correct, Your Honor. All right. And 230 is an affirmative defense. Is 12B6 an appropriate vehicle to handle this, or does it have to be either on 12C or on summary judgment? Well, Your Honor, we never had a chance to do any discovery, and we'll get to that in a second. You raised an interesting question. The court did rule as a 12B6 motion. I mean, there do seem to be some cases that say that 230 is an affirmative defense and that you don't have to plead around it for purposes of 12B6, that it either has to be a judgment on the pleadings or a summary judgment. So I don't know. I'm going to ask the other side about that. Okay. And we did, in fact, argue at the trial court level that we believed there was a question of fact and we needed a time for discovery. But as the Court's aware, we didn't – we neither had oral argument or had any other chance, other than the ruling on the 12B6, to deal with that. Well, I don't think you made the exact argument that I'm making right here, though. I would agree, Your Honor. We did not raise it in that context. I think you start out by simply saying there's a question of fact here, and we believe the law as the Court was – as Yahoo wanted applied, was too broadly sweeping that Section 230 was not intended to apply to these facts. And moving forward with our position, that is really the starting point and the focus point about this breach of negligent performance promise. The question before the Court is, does this claim fall outside of the Communication Decency Act, Section 230? Our position is it absolutely does. You start, of course, with the plain language and you begin your analysis there and then turn to congressional intent if the plain language leaves the question open. Here, the plain language of the statute says, No provider or user of any interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. So publisher or speaker, our position is that this is a tort that arose outside entirely the issue of being a publisher or speaker. Well, counsel, we have this passage from Fair Housing Counsel that says, quote, Any activity that can be boiled down to deciding whether to exclude material a third party seek to post online is perforce immune under Section 230, end quote. What do we do with that? Well, roommates is on a different path, Your Honor. Roommates is focused on information content providers and what steps Yahoo may have taken to develop in whole or in part any information. Because if you decide that this claim is outside 230, I think your analysis can stop there. If you turn to the plain language. Well, the problem is we're trying to decide whether it's within 230 or not, notwithstanding this extraneous promise. All right. Well, in determining whether it's inside 230, there are several different ways the Court can look at it. Initially, I think you have to look at the plain language and determine whether or not the allegations made by the plaintiff fall within the scope of the plain language. Our contention is they do not. And this Court and other courts have never faced this issue head-on except the Fourth Circuit and Zarin, which was cited by both sides. Our contention is Zarin's language has been construed by other courts as being going too far. The Zarin Court concluded that the plain language of Section 230 created a Federal immunity for any cause of action that would make service providers liable for information originating with a third party. Well, the idea that any cause of action is prohibited, as all of you are aware and we cite in our brief, that many commentators and many courts, especially recently the Seventh Circuit, which was cited in the Chicago lawyer's case, cited approvingly in the roommate's case, has started to say, wait a minute, Zarin's gone too far. I mean, you look at what Congress really intended and you look at the plain language, the idea that any Federal immunity to any cause of action is simply not in the statute. So you start with the plain language and you say, well, it's not even there. So this idea that any tort or cause of action that would make service providers liable as a result of any third party user of the service is Zarin went too far. Many courts have started to realize that. Commentators have been realizing that. And the roommate's case, the court en banc realized that. They started to look very carefully at the language. Now, in roommate's, Your Honor, and you raised that issue, roommate's focuses on the Here we're saying we don't have, our position is we don't have the information to know what Yahoo did. We were dismissed at 12 and 6, and therefore we haven't had discovery to know. We would ask you to reverse command the opportunity to do that discovery. There may be a claim for us to assert in terms of whether or not Yahoo in whole or in part developed this information, developed this information that's given rise to part of our clients' damages. But we don't think you need to go that far. If you start with the issue of the broken promise, the negligence claim, you can stop there. Well, I guess from a public policy standpoint, if we were to, you know, create, you know, say that people can plead around 230 in a lot of ways, then why would anyone, why would any website ever take anything down? I mean, clearly as a publisher, they're not responsible for it. So then they would just take a policy that they'll do nothing, and that doesn't sound good, because your client can't get this down on their own. Your Honor, let me address it two ways. First, from a public policy perspective, the issue in this case is what Yahoo chose to say. For instance, you're right, one, they could have done nothing. Two, and I think the policy behind the statute is to try to get them to do something on their own. And second, they could have done something on their own. So they didn't have to say anything to the plaintiff. They could have on their own made decisions about the content. But third, I think from a public policy perspective, it seems unreasonable to me. And Judge Gould and the dissent and Bassel points out that it would seem unreasonable that the law would expect that somebody could make promises to do something and have somebody not be able to rely on those promises and not have some claim resulting therefrom. Yahoo chose to do this. From a public policy perspective, Your Honor, the statute certainly would allow them not to do that. Or it would allow them to volunteer. It says in good faith you could voluntarily do what you want in terms of taking things down. So on its own it could have done something or it could have done nothing. But to tell somebody we're going to do something then creates a separate situation. And I think that's where our case differs. In terms of public policy, I think providers, interactive computer service providers have to decide if we're going to tell someone we're going to do it, then we have to do it. And that's really what we're deciding to do then. Under the present state of the law, then would it be your position that if she had contacted Yahoo and they said, hey, too bad, we're not doing anything about it. And she said, well, you know, this is dangerous to me. I've got these men showing up at my work, you know, thinking I'm coming for acts of sex or, you know, I'm concerned, they know where I am, all of that. And they just said, hey, too bad, we're not going to do anything. Is 230 a shield for them if that's what the conduct had been? 230, as it stands today, is a shield. It clearly says they do not have to do anything, Your Honor. I would concur. The difference in this case is they chose. Even if you're in danger, even if you're in danger, you know, that the act, you know, if you say, well, look, I'm in danger. You know, these bad people are coming to my work and, you know, I can't, you know, and you're giving them the information. But right now the state of the law would be that 230 would shield them. I think so, Your Honor. And from a public perspective, that may not be what Congress intended or wanted, but that's the state of the law. All right. Thank you, Counsel. Our questions have taken you over your time. Your time has expired. Thank you. We'll hear now from Mr. Karome. Karome? It's Karome, Your Honor. Karome. Good morning. Patrick Karome, counsel for FLE-Yahoo from WilmerHale in Washington, D.C. I want to ask you a question. There's no question that the vindictive scheme that Ms. Barnes' ex-boyfriend engaged in was grotesque and cruel. Nevertheless, as a matter of law, this suit is really no different than the great multitude of cases in which courts have deemed an online intermediary to be immune from liability. Counsel, I want to talk to you about what it means to be an intermediary in this context, and I want to start with a couple of examples. Let's suppose that Yahoo decided that Ms. Barnes was a fabulous blogger and they wanted to be sure to have her content on Yahoo and agreed to pay her $5,000 in exchange for her doing a blog once a week. Enforceable contract or not an enforceable contract? The contract to pay her a royalty for having her content? Yes. I believe that that's an enforceable contract. Okay. Now let's suppose that she was so intent on having the information that was there removed that she offered to pay you $5,000 in exchange for removing it and you agreed. Enforceable contract or not an enforceable contract? Your Honor, that's a very close question, I think. The courts have said that section 230 is an immunity, even from some types of breach of contract actions. I would say that we don't get to that question here because there is no claim of a contract. There's a claim of quasi-contract, which we're getting closer and closer. The question isn't really anymore whether you're an intermediary, it seems to me, but whether you have made an enforceable promise to do something. It just seems separate to me. I guess I'm not being very articulate about it. I thought about this question and the answer that I believe is the correct answer to Your Honor's question is that at least where the alleged breach is a failure of an online intermediary to remove or block third-party content and the injury in question is entirely an injury flowing from harm caused by the availability of that online content, in that situation, I would say that section 230 is an immunity. And there are courts which have said this, including even the Basel court has a footnote that says that section 230C2 is an immunity from contract liability. It seems to me, though, that the public policy arguments, at least, are quite different when there has already been a promise. If somebody could just call up and complain and then liability could be predicated on not doing anything, it's hopeless because who knows if these people are, in general, going to be truthful or if they themselves are vindictive. I mean, it puts an impossible burden. But once there's been a decision freely made by Yahoo to take something off and a promise to that effect, it takes it out of the realm of having to do, having all those public policy promises. And the public policy seems to me to be quite different to require it to live up to a specific promise that's made to a specific person about specific items. Your Honor, I think that the public policy arguments work just as much here in favor of Yahoo as they do in other circumstances, and I'd like to try to develop that point. This theory of liability that is being asserted here is a good Samaritan doctrine. The section 323 of Restatement of Torts is commonly referred to, including by this young court, as a good Samaritan doctrine, a good Samaritan rule of liability. Section 230, of course, was explicitly enacted to overturn good Samaritan forms of liability because the case that Congress most wanted to overturn was the Stratton Oakmont case, where on a broader scale, the Prodigy Online Service had undertaken good Samaritan obligations. It had told the world, we're going to keep this whole service free of particular types of conduct. But the protections of 230 can be waived, can they not? Actually, I'm not sure. There's never been any case which has held that section 230 immunities can be waived. In fact, what happened here is that just as Stratton Oakmont had gone down, had gone through the right thing and removed content that it deemed to be objectionable or harmful, but had failed to remove the particular content that was alleged to cause the harm in that case, here, what Ms. Barnes is alleging is that Yahoo, through this voluntary act of one of its employees, saying, please tell me where the bad content is, help me find it, and I'll see what I can do to help, or I maybe went further and said, I will do what I can to take it down. She began down that road to help, to make an undertaking to help, just as Stratton Oakmont, just as Prodigy had done in the Stratton Oakmont case on a more macro scale. This is a more micro scale of beginning down the road to help. Congress But Yahoo doesn't want bad press. They get contacted. I mean, it's clear that Yahoo here is, you know, that they're going to be in the newspaper and it's going to be something along those lines. That's a little bit, and they want to avoid that. So, Your Honor, the lesson that the online community would learn from imposing liability in this case and removing the Section 230 immunity in this case, because Yahoo had interacted with Ms. Barnes and had made that statement to Ms. Barnes, as is alleged, the lesson would be, whatever you do, don't ever try to help a user. Don't engage in any communication with them. Actually, shut your ears to hearing from them. The last thing you want to do is create a situation where it can be alleged that you made an undertaking. And by the way, the tort theory that's alleged here isn't a tort theory that depends simply on a promise. It's a tort theory that whatever you do to begin to help. Actually, it would be, this theory would be that the mere calling, reaching out to her and saying, please help us find where is this content that you're complaining about, that itself, under this theory of liability, Section 323 of the Restatement of Torts, that itself would create this special duty to follow through on the beginning of the helping. So I, what Congress was absolutely clear about, it did not want to create situations where online providers would fear that they're going to make themselves worse off from a matter of law by beginning down the road to helping. And the lesson that would be learned here would be just don't even have abilities to reach out to people. Just turn off your 800 numbers to receive complaints. Well, is 230 an affirmative defense? Your Honor, it is. It has been in some cases, including Judge Easterbrook in the GTE v. Doe case, characterized it as an affirmative defense. Many courts So how can 12b-6 be the proper remedy? Many courts have, including Judge Easterbrook in the Craigslist case, have upheld immunity on Section 230 at the Rule 12b-6 case. The rule that courts follow, and I believe the Ninth Circuit is well within the mainstream on this, is that where the bases for Section 230 immunity, an affirmative defense, are clear on the face of a complaint, then it is appropriate and perfectly fine for the court to adjudicate the issue at the 12b-6 case. Here, the elements of immunity are absolutely present on the face of the complaint. There's no doubt it's conceded that Yahoo is an interactive computer service. That's the first element. It is conceded that this content at issue here from the ex-boyfriend was entirely third-party content. On page 18 of the opening brief of AFL-E, they come right out and say that there's no question that, let me find the quote, Ms. Barnes does not claim that Yahoo played any role in creating the fictitious profile provided by Ms. Barnes's ex-boyfriend. So that takes care of the second element. The third element is, does the immunity, I'm sorry, does the liability that's the defendant as a publisher or speaker of third-party content? Here, it absolutely would. The entire harm that's alleged is harm flowing from the third-party content. The failure to act is a failure to edit or block content. That is, as the Zaran court and other courts have said, one of the quintessential duties of a publisher. And so we're being held liable for failing to act as a publisher. And it also puts, would put Yahoo in the very same position that the ex-boyfriend could be put in as a matter of liability. There's no doubt, and Congress intended that the originators of harmful content should be fully on the hook for liability. And if Ms. Barnes wants to go after her ex-boyfriend, there clearly are intentional infliction of emotional distress or other theories of liability that should be available to her. She didn't even name him as a co-defendant here. It puzzles me why not. But in any event, the elements here, in short, Your Honor, are of what have been recognized as the three elements of Section 230 immunity are absolutely clear on the face of the complaint. And here, as in many other cases, including what Judge Easterbrook did just earlier this year in the Craigslist case, provide for dismissal at the Rule 12b-6 stage. You know, I'm actually looking at that case, and I'm having difficulty determining from the way it's written whether it was in fact a 12b-6 case. And I was trying to figure that out. That's a very good question, Your Honor. I was counsel for Craigslist in that case. I believe that it was 12b-6. It may have been 12c. I think it was 12c. 12c is different. It's described in a way. And let me just say, the head notes may or may not be right. I don't find in the text of the decision an explanation of which subsection. But the head notes suggest it was a 12c on the pleadings. That may well be right. And I may have misspoken there. And if I did, I'm sorry. There are many cases where Section 230 immunity has been addressed at the 12b-6 stage. I don't think that the 12c versus 12b-6 is a different test. I believe that, in fact, the procedural procedure for 12b-6 are the same as for 12c in terms of, you know, treating the – accepting all of the allegations of the complaint as true. I think that the same legal test is in play. I would note that I'm certain that in the Doe v. AOL case in Florida, which is one of the three cases which Congress has expressly endorsed in the Dot Kids subsequent legislation, along with Zeran and the Benezer case, those cases, that case certainly was a 12b-6 case. And it is – there's certainly law to the effect that when the – all of the grounds for the affirmative defense are plain on the face of the complaint, it is perfectly appropriate for a court to rule on a 12b-6 stage. There are a couple of – Mr. Rask is right to be concerned about the Zeran case, because that case is absolutely on all fours with this case. In that case, there indeed was an assurance that content would be taken down, and the Court had no trouble not finding that to be a basis for defeating the immunity. And as I noted before, Zeran – Congress has specifically endorsed Zeran and the other cases several years later when it extended the reach of Section 230 in the Dot Kids context, and the committee report specifically says that the courts have gotten it right, including Zeran. And the California Supreme Court specifically found that that was a – it was appropriate to look at that subsequent legislative history because of the situation of this was an enactment of new legislation extending the reach of Section 230. Mr. Rask made some claim that maybe this really is like roommates because they want to develop some notion that Yahoo somehow contributed to this content. That is not at all a possible way that they can go in this case. They, as I have said, have already completely conceded in their brief, and I think it's clear from their complaint as well, that Yahoo had nothing whatsoever to do with the content. So this clearly is not a case where there could be any suggestion that Yahoo itself contributed to these grotesque profiles and harassment scheme of Ms. Barnes's ex-boyfriend. I guess I want to come back to the – I see my time is running out – to the Good Samaritan point. Congress was making a different rule for online service providers. It did not want them to be worse off because they had gone partway down the path of attempting to do the right thing. If we were talking Restatement 90 instead of Good Samaritan 323, would your analysis be different? I don't think so, Your Honor. I think that really, as I said, that there are cases, including the Schneider case and the Doe case in Connecticut, where courts have already said Section 230 is in appropriate context. It is an immunity even from breach of contract liability. But I would say, Your Honor, that when you're being put in a worse position for having attempted to do the right thing, that is, whether it's by contract or some other form of duty, Section 230 is not about what is the name of the tort or what is the name of the cause of action. All right. Thank you, counsel. Your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Graber, Callahan